# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID NELSON, )<br>)<br>      **Plaintiff,**   )<br>)<br>v.                               )<br>)<br>COMMISSIONER of the Social )<br>Security Administration, )<br>)<br>      **Defendant.**  )| Case No. CIV-17-360-SPS |

## OPINION AND ORDER

The claimant David Nelson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 164). He completed eleventh grade and has previously worked as a truck driver (Tr. 192, 411). The claimant alleges that he has been unable to work since an amended onset date of May 2, 2015, due to bipolar disorder, diabetes, neuropathy, hearing loss, depression, and anxiety (Tr. 160, 410).

## Procedural History

On December 18, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 384-95). His applications were denied. ALJ Thomas John Wheeler conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 18, 2016 (Tr. 138-50). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour

workday, and sit for six hours in an eight-hour workday (Tr. 144). Additionally, he found that the claimant could perform simple one to two step tasks with routine supervision, adapt to a work setting and some changes in a work setting, and interact appropriately with coworkers and supervisors for incidental work purposes, but should avoid contact with the public (Tr. 144). Lastly, the ALJ found that the claimant had some difficulty with hearing and could understand conversations at normal volume and rate, but should avoid work around unprotected heights and dangerous moving machinery (Tr. 144). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the national economy, *e. g.*, bench assembler and small parts assembler (Tr. 148-49).

### Review

The claimant's sole contention of error is that the ALJ relied on vocational expert ("VE") testimony at step five that was inconsistent with the Dictionary of Occupational Titles ("DOT"). More specifically, he states that the RFC limitation of simple, one to two step tasks with routine supervision is inconsistent with a reasoning level of two. This contention does not have merit, and the decision of the Commissioner must therefore be affirmed.

The ALJ found that the claimant had the severe impairments of bilateral knee joint dysfunction, lumbar degenerative disc disease, diabetes mellitus, neuropathy, hearing loss, tinnitus, hyperlipidemia, obesity, bipolar disorder, personality disorder, and a history of polysubstance abuse (in remission) (Tr. 140). The medical evidence relevant to the claimant's mental impairments reflect that he received treatment at Carl Albert Community

Mental Health Center ("CACMHC") from July 2008 through June 2009 for bipolar disorder not otherwise specified (Tr. 621-26). The claimant indicated that he no longer wanted case management services in June 2009 and his chart was closed (Tr. 617-18). The claimant resumed treatment at CACMHC in December 2009 and was consistently treated there through at least July 2016 (Tr. 57-58, 91-102, 506-601, 650-54).

In addition to medication management at CACHMC, the claimant also received inpatient mental health treatment from November 19, 2012, through November 28, 2012, due to suicidal thoughts and increasing paranoia and auditory hallucinations (Tr. 548-53). Upon discharge, Dr. William Mings diagnosed the claimant with bipolar disorder, mixed, alcohol dependence (full remission), and amphetamine dependence (full remission) (Tr. 550). He assigned a Global Assessment of Functioning ("GAF") score of fifty-five and noted the claimant's prognosis was guardedly optimistic depending on follow-up care and compliance with treatment recommendations (Tr. 550).

On April 14, 2015, Kathleen Ward, Ph.D., conducted a consultative psychological examination of the claimant (Tr. 635-39). Dr. Ward observed that the claimant appeared with a strong odor of smoke, had an unkempt beard, and that his hair did not appear freshly washed (Tr. 636). She found the claimant had normal thought processes and content, was oriented, had average intellectual abilities, and had no deficits in social judgment or problem solving (Tr. 637). Dr. Ward diagnosed the claimant with bipolar disorder, antisocial personality traits, and trichotillomania, encouraged him to remain in treatment, and indicated that he may be a good candidate for talk therapy (Tr. 637-38).

State reviewing psychologist Dr. Jason Gunter completed a Psychiatric Review Technique form on April 16, 2015 (Tr. 265-67). Dr. Gunter found that the claimant's mental impairments were severe and consisted of affective disorders and anxiety disorders (Tr. 265). As a result, Dr. Gunter found that the claimant was moderately impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 266). He concluded that the claimant could perform simple work in a nonpublic setting (Tr. 267). His conclusions were affirmed on review (Tr. 302-04).

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") to determine if there were other jobs the claimant could perform (Tr. 191-95). As part of the questioning, the ALJ posed a hypothetical that included the following restrictions: (i) lift and carry twenty pounds on occasion, but ten pounds frequently; (ii) sit for six hours out of an eight-hour day; (iii) stand or walk for six hours out of an eight-hour day; (iv) unlimited pushing and pulling except for the lifting and carrying restrictions; (v) interact appropriately with co-workers and supervisors for incidental work purposes, but should avoid contact with the public regarding work-related tasks; (vi) adapt to a work setting and some changes in the work setting; and (vii) has some difficulty with hearing, but can understand normal conversations at normal rate and volume, and should not work on unprotected heights or dangerous moving mechanical parts (Tr. 192-94). The VE indicated that the claimant could not perform any of his past work but identified two light jobs such a person could perform: (i) bench assembler, DICOT § 706.684-042; and

(ii) small parts assembler, DICOT § 706.684-022 (Tr. 193-94). The VE further indicated that the information she provided was not in conflict with the DOT (Tr. 194).

In his written decision, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. As to the claimant's mental health, the ALJ found the claimant's treatment was routine and conservative, and that he did not require frequent medication modifications (Tr. 145). The ALJ also found the claimant did not require any inpatient treatment during the relevant period, noting his November 2012 hospitalization occurred well before his alleged onset date (Tr. 145). The ALJ afforded Dr. Ward's assessment little weight because she did not make a statement about the claimant's ability to perform work activities (Tr. 147). The ALJ gave substantial weight to the state agency psychologists' opinions, finding them to be consistent with Dr. Ward's examination findings and the treatment notes showing that the claimant's symptoms improved and that his condition was stable (Tr. 147). The ALJ included all the limitations from the above-described hypothetical in the RFC (Tr. 144). He then adopted the VE's testimony that the claimant could perform the light jobs of bench assembler and small parts assembler (Tr. 149). Furthermore, the ALJ specifically noted that he asked if the VE testimony was consistent with the information contained in the DOT, and that the answer was that the testimony was consistent (Tr. 149). The ALJ stated that he "accept[ed] that expert testimony." (Tr. 149).

The claimant asserts that the ALJ erred in identifying jobs he could perform because there was a conflict between the VE's testimony and the DOT. Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with

information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the VE did not identify any conflict between her testimony and the DOT, the claimant contends there is a conflict regarding the reasoning levels of each of the jobs identified. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The jobs of bench assembler and small part assembler both have reasoning levels of two. *See* DICOT §§ 706.684-042, 706.684-022. A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DICOT §§ 706.684-042, 706.684-022. The claimant asserts that this reasoning level is incompatible with simple work. The Court agrees with the Commissioner, however, that a reasoning level of two *is consistent* with performing simple tasks, and that other courts have reached the same conclusion. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) ("This level-two reasoning appears more consistent with Plaintiff's RFC [limiting her to simple and routine work tasks.]"); *Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) ("Ms. Stokes' second

argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."). *See also Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. March 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," and "[t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two.").

In sum, the ALJ analyzed the claimant's RFC, posed proper hypothetical questions incorporating the RFC to the VE, determined that the VE's testimony was consistent with the DOT, and thus properly relied on that testimony to determine that the claimant could perform work and was accordingly not disabled. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) (noting that an ALJ's hypothetical questioning of a VE will provide an appropriate basis for a denial of benefits where the questions "included all the limitations the ALJ ultimately included in his RFC assessment."), *citing Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir. 1993). Consequently, the decision of the Commissioner must be affirmed.

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 21st day of March, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**